675 S.E.2d 448

**Kent BLACKBURN and Allison R. Minnich, Appellants,**

v.

**TKT AND ASSOCIATES, INC., Martha C. Carver, and Raymond T. Windham, Respondents.**

No. 4496.

Court of Appeals of South Carolina.

Submitted Dec. 1, 2008.

Decided Jan. 28, 2009.

Withdrawn, Substituted and Refiled March 26, 2009.

Louis D. Nettles, of Florence, for Appellants.

C. Pierce Campbell and J. Rene Josey, of Florence, for Respondents.

HEARN, C.J.

Minority shareholders, Kent Blackburn and Allison Minnich, appeal an order denying their objections to a court-ordered appraisal of common stock of Respondent, TKT and Associates, Inc., (TKT) for the purpose of a shareholder buyout. We affirm.

## FACTS

In late 2002, TKT was formed by Blackburn, Tina Carver, and Tony Windham to sell durable medical equipment (DME).[1] The corporation was funded by a loan for $50,000, which each incorporator co-signed. Upon receiving the necessary authorization to provide DME through Medicaid, the business began operations under the name Carolina Mobility. Shortly thereafter, Carolina Mobility hired Minnich, a sales representative with experience in the DME field. Under the

---

1. DME includes walkers, wheelchairs, medical beds, canes, shower seats, bed pans, sponges, sock aides, and other adaptive equipment.

terms of Minnich's employment, she received ten percent of the shares of TKT.[2]

Both Blackburn and Minnich worked for Carolina Mobility full-time from its inception; Blackburn working closely with Minnich in order to learn the DME business. While Minnich received a salary, Blackburn was only paid when distributions were made to the other majority shareholders. Consequently, in August of 2003, Blackburn left Carolina Mobility to work with Darlington EMS so he could receive a regular paycheck.

After Blackburn left, Minnich assumed nearly all the responsibilities of running the company. In early 2004, both Carver and Windham announced their intention to work for the company on a full-time basis and receive a salary from Carolina Mobility in the amount of $60,000 a year, respectively. Additionally, Minnich's salary was raised to $60,000. Despite Carver and Windham's promise to work for Carolina Mobility on a full-time basis, both split time working for Carolina Mobility and another corporation they owned.

In July 2004, Carolina Mobility began experiencing cash flow issues, which resulted in Minnich receiving only seven of the twelve pay checks due to her for the months of July to December. Thus, in spite of Carver and Windham's promise to pay Minnich a $60,000 salary, Minnich received only $39,000 of actual compensation in 2004, while Carver and Windham each received approximately $34,000.

In January of 2005, Minnich's salary was lowered to $40,000, while Carver and Windham each lowered their salary to $30,000. Minnich, who believed Carver and Windham's salaries were still too high, called Blackburn and set up a shareholders meeting to discuss the matter with Carver and Windham. Shortly after the meeting, Minnich left Carolina Mobility, and, in July of 2005, both Blackburn and Minnich sought judicial dissolution of the corporation.

Following a one-day bench trial, the trial court issued an order stating Carver and Windham engaged in self-dealing, which deprived Blackburn and Minnich of "the economic bene-

---

2. Blackburn, Carver, and Windham collectively retained ninety percent ownership interest in the corporation, with each party holding a thirty percent ownership interest.

fit of the value of the [c]orporation's stock by excluding the minority shareholder from the profits of the corporation." Furthermore, the trial court found: (1) Carver and Windham paid themselves in excess of their respective contributions to the corporation; (2) Carver and Windham improperly drained the corporations assets through claims of services as employees of the corporation; and (3) the corporation was devalued by paying Minnich her salary and then splitting the remaining earnings as individual salaries rather than profit.

Despite finding for Blackburn and Minnich, the trial court declined to dissolve the corporation. Instead, it ordered Carver and Windham to purchase Blackburn and Minnich's shares at their fair market value pursuant to section 33–14–310(d)(4) of the South Carolina Code (2006).[3] In its order, the trial court sought to determine fair market value of the corporation's stock by having an appraiser, agreed upon by both parties, determine the value of Blackburn's and Minnich's respective shares. Once chosen, the appraiser was given access to the documents introduced at trial by Blackburn and Minnich regarding the value of the services performed by Carver and Windham, in order to make any adjustments to their respective salaries and to the value of the corporation. The appraiser also asked the parties to agree upon an adjustment figure regarding Carver and Windham's salaries, but no agreement was made.

Upon receiving the appraisal, Blackburn and Minnich filed an objection to the report arguing the appraiser failed to comply with the trial court's order by not adjusting Carver and Windham's salaries. Blackburn and Minnich's motion was denied and judgment was entered. This appeal follows.

## LAW/ANALYSIS

On appeal, Blackburn and Minnich argue the trial court erred in admitting the appraiser's report because the apprais-

---

3. Section 33–14–310(d) provides: "In any action filed by a shareholder to dissolve the corporation on the grounds enumerated in Section 33–14–300, the court may make such order or grant such relief, other than dissolution, as in its discretion is appropriate, including, without limitation, an order: ... (4) providing for the purchase at their fair value of shares of any shareholder, either by the corporation or by other shareholders."

er failed to adjust the salaries of Carver and Windham as required by the trial court's order. We disagree.

Simply put, the trial court's order commands Carver and Windham to buy Blackburn's and Minnich's individual shares at fair market value. Specifically, the trial court ordered, "the parties are to agree upon an impartial corporate appraiser ... who will compute the [c]orporation's value, and assign a dollar value per share of the corporate stock." While Blackburn and Minnich argue the trial court's order implies an adjustment must be made in determining fair market value of the corporation, the order does not expressly require such an adjustment. Assuming arguendo that this was the implication of the trial court's order, there was neither a finding regarding the amount of any adjustment, nor did Blackburn and Minnich make a post-trial motion requesting the trial court issue such a finding.

Furthermore, as stated in the trial court's second order denying Blackburn and Minnich's objections to the appraisal, no evidence or information was proffered showing the report was prepared improperly. This was also the case at trial, where Blackburn and Minnich offered minimal evidence to the trial court regarding the actual value of the services Carver and Windham provided to the corporation. With respect to this issue, the only evidence of note came from Minnich's testimony and deposition. Minnich testified to the hourly rate she paid her own employees in her current job in the DME field. Moreover in her deposition, Minnich speculated about the going rate for technicians and secretaries, positions with duties similar to those services provided by Carver and Windham. Yet despite Minnich's estimates concerning the comparable hourly rate of the services provided by Carver and Windham, Minnich agreed she could not determine, or create a formula for determining, the amount Carver and Windham were overpaid.

Therefore, Blackburn and Minnich failed to present evidence indicating the appraisal was conducted in an improper manner, or contrary to the trial court's order. Consequently, the trial court did not err in denying Blackburn and Minnich's

objections to the admission of the appraisal. The decision of the trial court is

**AFFIRMED.**

SHORT, J., and KONDUROS, J., concur.